PATRICK BALDWIN, ESQ. (SBC # 93337)
CHRISTINE MCNAMARA, ESQ. (SBC # 165297)

2  BALDWIN AND MCNAMARA
530 Oak Grove Avenue, Suite 207
3  Menlo Park, CA 94025
Phone: (650) 326-8195
4  Fax: (650) 326-0467

5
GEORGE ESHOO, ESQ. (SBC #39081)
6  LAW OFFICES OF GEORGE ESHOO
702 Marshall Street, Suite 500
7  Redwood City, CA 94063
Phone: (650) 364-7030
8  Fax: (650) 364-3054

9
Attorneys for Plaintiffs
10  VERONA PARTNERS, LLC; GOLDEN GATE VI'
MULTI STRATEGY FUND, LP; GOLDEN GATE VI' MULTI
11  STRATEGY OFFSHORE FUND, LTD.; GOLDEN GATE
FINANCIAL GROUP LLC 401 K PROFIT SHARING
12  PLAN AND TRUST DATED 6/21/2002; AND, ORION
13  VI' ABSOLUTE RETURN FUND, LP

INTIIE UNITED STATF.5 DISIlUcr COURT

14
NORTHERN DISTRICT OF CALIFORNIA
15

16  VERONA PARTNERS, LLC; GOLDEN          ) CASE NO. C05 5369 PJH
GATE VI' MULTI STRATEGY FUND, LP;     )
17  GOLDEN GATE VI' MULTI STRATEGY        ) COMI>LAINT
OFFSHORE FUND, LTO; GOLDEN GATE       )
18  FINANCIAL GROUP LLC 401 K PROFIT      )
SHARING PLAN AND TRUST DATED          )
19  6/21/2002; AND, ORION VI' ABSOLUTE    )
20  RETURN FUND, LP,                      )
                                          )
21              Plaintiffs                )
                                          )
22  v.                                    )
                                          )
23  TENET CAPITAL PARTNERS                )
CONVERTIBLE OPPORTUNITIES FUND,        )
24  LP; TENET ASSET MANAGEMENT, LLC;      )
JON E. HANKINS; AND, OLYMPIA           )
25  CAPITAL ASSOCIATES, LP,               )
                                          )
26              Defendants.               )
                                          )
27

28

COMPLAINT                                    - 1 -

COMES NOW, Plaintiffs Verona Partners, LLC; Golden Gate VP Multi Strategy Fund,

2   LP; Golden Gate VP Multi Strategy Offshore Fund, Ltd.; Golden Gate Financial Group, LLC;

3   Golden Gate Financial Group Profit Sharing 40 IK Plan and Trust dated 6/21/2002, and, Orion VP

4   Absolute Return Fund, LP (collectively "Plaintiffs"), and allege as follows:

5                          **.JURISDICTION   AND  VENUE**

6       1.  The amount in controversy, exclusive of interests and costs, exceeds $75,000.

7       2.  This Court has diversity jurisdiction of this action pursuant to 28 V.S.C. §1332.

8   Subject-matter jurisdiction in this case is also founded on 28 V.S.C. § 1331 (federal question

9   jurisdiction).

10      3.  Personal jurisdiction and venue in this case are governed by Section 27 of the

II  Securities and Exchange Act of 1934 Act, as amended (the "1934 Act") which confers jurisdiction

12  in the district courts over violations of federal securities law. Title 15 V.S.c. § 78aa (1988). Civil

13  suit may be brought in any district "wherein any act or transaction constituting the violation

14  occurred" or "herein the defendant is found or is an inhabitant or transacts business." Section 27

15  also provides for nationwide service of process for claims of violations of federal securities law.

16  Jurisdiction and venue are proper in this Court because misrepresentations  and non-disclosures,

17  constituting violation of the securities laws, occurred in this judicial district.

18                              **PARTIES**

19      4.  Plaintiff Verona Partners, LLC ("Verona") is a California Limited Liability Company

20  with its principal place of business in San Francisco, California.  Verona invested in the

21  Opportunities Fund, as set forth below.

22      5.  Plaintiff Golden Gate VP Multi Strategy Fund, LP ("Onshore Fund") is a Delaware

23  Limited Partnership with its principal place of business in San Francisco, California.  The general

24  partner of Golden Gate LP is Golden Gate Alternative Asset Management Group, LLC.  The

25  Onshore Fund invested in the Opportunities Fund, as set forth below.

26      6.  Plaintiff Golden Gate VP Multi Strategy Offshore Fund, LTD ("Offshore Fund") is a

27  Cayman Islands Corporation. The Offshore Fund maintains a place of business in San Francisco,

28  California. The Offshore Fund invested in the Opportunities Fund, as set forth below.

rOMPl  AINT

7. Plaintiff Golden Gate Financial Group LLC Profit Sharing 401K Plan and Trust dated 6/21/2002 ("Profit Sharing Plan") is an ERISA Plan under the Employee Retirement Income Security Act of 1974. Its principal place of business is in San Francisco, California. The Profit Sharing Plan invested in the Opportunities Fund, as set forth below.

8. Plaintiff Orion VI' Absolute Return Fund, LP is a Delaware Limited Partnership ("Return Fund") with its principal place of business in San Francisco. The Return Fund invested in the Opportunities Fund. The general partner of thc Return Fund is Orion Alternative Asset Management, LLC.

9. Defendant Tenet Capital Partners Convertible Opportunities Fund, LP ("Opportunities Fund or "Fund") is a Delaware limited partnership. Tenet Asset Management, LLC ("Tenet") is its general partner and investment adviser. Upon information and belief, since its inception on April 1, 2004, 17 investors invested a net total of approximately $22 Million in the Opportunities Fund and as of May 31,2005, the Opportunities Fund had approximately $9.9 Million in net assets.

10. Defendant Tenet Asset Management, LLC ("Tenet") is a Delaware limited liability company with its principal place in Knoxville, Tennessee. Tenet is the investment advisor to and General Partner of the Opportunities Fund.

11. Defendant Jon E. Hankins ("Hankins") founded the Opportunities Fund in 2004. As the principal and managing member, Hankins controls all of Tenet's operations and makes all of the investment decisions with respect to all Tenet Funds, including the Opportunities Fund. Upon information and belief, Hankins is not registered as an investment advisor or in any other capacity under the Tennessee Securities Act of 1980 or the laws of California. Plaintiff is informed and believes and on that basis alleges that Hankins is a resident of Tennessee.

12. Defendant Olympia Capital Associates, LP ("Olympia") is the professional fund administrator for the Opportunities Fund. Olympia was engaged by Tenet to provide administrative and related services to the Opportunities Fund, including, but not limited to, preparing and forwarding, monthly and or other periodic account and net asset value (NA V) statements to investors in the Opportunities Fund, including Plaintiffs. Olympia maintains principal offices in

COMPLAINT

2    13. The Plaintiffs join herein against Defendants because they assert rights to relief

3  jointly arising out of the same transaction, occurrence, and or series of transactions and or

4  occurrences and because questions of law or fact are common to all Plaintiffs and common causes

5  of action arise out of the common facts. In engaging in the activities alleged herein each Defendant

6  was acting as the authorized agent of the other.

7                              **GENERAL   ALLEGATIONS**

8    14. Each Plaintiff is a fund of hedge funds, with the exception of the Profit Sharing

9  Plan, which is an employee pension plan under the Employee Retirement Income Security Act of

10  1974 (ERISA). Each Plaintiff invested in the Opportunities Fund seeking conservative, fully

II  hedged, non-directional, diversified, non-volatile investments. Each Plaintiffs objective was

12  preservation of capital and each Plaintiffs risk tolerance was moderately low.

13    15. Plaintiffs invest in different hedge funds having different investment parameters,

14  styles, strategies and risk profiles in order to achieve diversification.

15    16. Plaintiffs use the services of financial institutions ("Counterparties") to assemble a

16  "reference basket" of hedge funds. Plaintiffs instruct and direct the Counterparties as to the

17  specific hedge funds to invest in or "place" in the "reference basket" on Plaintiffs' behalf, as well

18  as the timing and amounts of the investments. As part of the transaction, Plaintiffs then purchase an

19  over-the-counter derivative option ("Hedge Fund Option") or total return equity swap ("Hedge

20  Fund Swap") (collectively "Hedge Fund Derivative(s)") from the Counterparties based on the

21  "reference basket." The value of the Hedge Fund Derivative is directly based upon and

22  proportionate to the "reference basket" and does not trade independent of the "reference basket."

23  Plaintiffs adjust the composition of the reference basket as they determine appropriate. Plaintiffs

24  use the services of the Counterparties for leverage and for financing purposes.

25    17. Hedge Fund Derivatives present all the risks of a direct investment in the

26  underlying hedge fund. Factors adversely affecting the value of the underlying hedge fund will

27  adversely affect the value of the corresponding Hedge Fund Derivative.

28    18. Plaintiffs used the services of the RBC Capital Markets Corporation, as agent for

r'ru..tPL A!NT

Royal Bank of Canada (collectively "RBC"), Wachovia Capital Markets, LLC, as agent for

2  Wachovia Bank, National Association (collectively "Wachovia") and Bank of America Securities,

3  LLC, as agent for Bank of America, N.A. ("Bank of America") as Counterparties.

4        19. At all times relevant, Tenet knew Plaintiffs were investing in the Opportunities

5  Fund through RBC, Wachovia and Bank of America.

6        20. On or about May 28, 2004, Plaintiffs received from Lehman Brothers Capital

7  ("Lehman") various sales and promotional information regarding Tenet, Hankins and the

8  Opportunities Fund ("Tenet Pitch Book") prepared by Hankins and Tenet. The Pitch Book was

9  prepared for dissemination to prospective investors in the Opportunities Fund.

10        21. The Tenet Pitch Book represented Tenet's investment strategy in the Opportunities

11  Fund as (I) low volatility, (2) consistent above average returns (15-20% in all market conditions),

12  (3) eliminating or reducing underlying equity risk of the convertible bond while achieving equity

13  type returns, (4) mitigating risk through diversification, (5) non-directional, (6) neutral hedged, and

14  (7) yield advantaged.

15        22. According to the Tenet Pitch Book, the Opportunities Fund would invest in

16  convertible bonds and equities with arbitrage strategies involving the simultaneous purchase of a

17  convertible bond and the short selling of the underlying equities and a particular strategy would be

18  "synthetic convertible bond arbitrage" involving investments in treasury bills, short positions of

19  equities, and call and put options.

20        23. The Tenet Pitch Book stated the strategy of "convertible arbitrage provides for

21  positive returns regardless of the direction of the equity market" and that Tenet *hedged against*

22  directional bets in anyone security.

23        24. Beginning in or about May 2004 and continuing throughout 2004, Defendant

24  Hankins made the following representations to Plaintiffs in connection with proposed investments

25  by Plaintiffs in the Opportunities Fund:

26        (a) Hankins would only use a fully hedged trading strategy that limited an investor's

27  exposure to market risk;

28        (b) Hankins would preserve capital and mitigate risk through diversification;

rOAP' A TNT

2    investment objective of preservation of capital and moderate risk tolerance;

3    (d) Hankins would invest only in a manner consistent with Plaintiffs' moderate risk
4    *tolerance;*

5    (e) Hankins would not invest a disproportionate amount in anyone single issuer;

6    (I) Hankins *would* engage in only conservative arbitrage investment strategies;

7    (g) Hankins' return on investment was 32.5% in 2004;

8    (h) Hankins would invest in a manner such that the fund would have low volatility;

9    (i) Hankins would follow a strategy of (fully hedged) "synthetic convertible bond"
10   arbitrage involving investment in treasury bills, short positions in equities, and call and put option
11   positions in those same equities;

12   U) Hankins would provide consistent returns in all types of markets;

I3   (k) Tenet hedged against directional bets in anyone particular security;

14   (1) No one investment *would* comprise more than 5% of the fund and in any event all
15   investments *would* be fully hedged; and,

16   (m) The Opportunities Fund would follow a strategy to preserve *capital* and mitigate
17   risk through diversification of investments and hedging activities.

18   25. The forgoing statements were false and at the time Hankins made the statements he
19   knew them to be false in that, among other things:

20   (a) The Opportunities Fund incurred substantial losses as a result of Hankins and

21   Tenet's decision to take large, naked short, concentrated positions in Google, Inc *("Googl ")* shares
     e

22   resulting in the fund's value decreasing by approximately 20% in April 2005 and 40% in May

23   2005; At the end of April and May 2005, the Opportunities Fund *held* collective concentrated short

24   positions of 201,500 and 260,091 *Googl* shares, respectively;
                                          e

15   (b) Hankins took no steps to mitigate risk or hedge the naked short, concentrated Googl
~    position;                                                                                    e

7    (c) The Googl shares represented a concentration of the Opportunities Funds' assets,
             e
~    which ultimately turned into *liabilities;*

COMPLAINT

(d) Hankins and Tenet had a 20% negative return in 2004, not a 32.5% gain;

(e) At the end of May 2005, the Funds' positions in Google accounted for virtually all of the Fund's liabilities and represented more than 450% of the net market value of the Fund's total equity, i.e., 450% margin was used in connection with the Google position;

(f) Hankins engaged in speculative concentrated trading strategies, not moderate-risk hedged strategies;

(g) Hankins and Tenet took no steps to hedge against, or mitigate, the risk of increases in the share price of Google stock;

(h) In an effort to conceal his fraud, in or about April 2005, Hankins instructed Olympia not to forward monthly reports of the Opportunities Fund's transactions to third parties, including Plaintiffs;

(i) Hankins falsely represented there was difficulty with the reports because the fund had recently changed prime brokers and there were certain internal difficulties due to a misallocation of transactions;

(j) Hankins took over-concentrated directional (naked short) bets against one security (Google) in the Opportunities Fund; and,

(k) Hankins invested in a manner that was highly speculative, not hedged, concentrated and severely volatile.

26. On or about February 1,2005, Plaintiff Verona and Plaintiff Profit Sharing Plan directed RBC to invest a total of $1,148,000 in the Opportunities Fund.

27. Similarly, on or about March 1,2005, Plaintiff Verona and Plaintiff Profit Sharing Plan directed Wachovia to invest a total of $1,056,000 in the Opportunities Fund for their respective accounts and the same Plaintiffs directed RBC to invest a total of $1,200,000 in the Opportunities Fund. Thus, on or about March 1,2005, Verona and the Profit Sharing Plan invested a total of $ 2,256,000.

28. On or about April 1,2005, Plaintiff Verona and Plaintiff Profit Sharing Plan directed RBC to invest a total of$750,000 in the Opportunities Fund.

29. On or about April I, 2005 Plaintiff Onshore Fund and Plaintiff Return Fund

rOMPLAINT

directed Bank of America (now known as "Society General") to invest a total of $3,475,000 in the

2 Opportunities Fund for them respectively.

3       30. On or about May 5th, 2005, Plaintiff Onshore the Return Fund, and the Offshore

4 Fund directed RBC to invest a total of $4,000,000 in the Opportunities Fund for their respective

5 accounts.

6       31. During the period February 1,2005 through and including May 5th, 2005, Plaintiffs

7 invested a total of $11,629,000 in the Opportunities Fund, as follows:

8       (a) $ 2,337,391 invested by Plaintiff Verona;

9       (b) $ 1,816,609 invested by Plaintiff Profit Sharing Plan;

10       (c) $ 1,310, 885 invested by Plaintiff Onshore Fund;

II       (d) $ 1,965,097 invested by the Offshore Fund; and,

12       (e) $ 4,199,018 invested by Plaintiff Return Fund.

13       32. The foregoing investments were made as a result of and in reliance upon the written

14 and oral representations made by and or on behalf of Hankins, Tenet and the Opportunities Fund.

15 Defendants, and each of them, were aware that Plaintiffs had made and were continuing to make

16 substantial investments in the Opportunities Fund based upon their ongoing false representations.

17       33. On February 1,2005, as set forth above, Plaintiffs Verona and the Profit Sharing

18 Plan made their first investment in the Opportunities Fund and that same day Tenet appointed

19 Lehman its prime broker in consideration for Lehman having secured Plaintiffs as clients of Tenet

20 and Hankins and for having secured Plaintiffs' investments in the Opportunities Fund.

21       34. On February 22, 2005, almost immediately after Lehman became its prime broker,

22 Tenet incurred a margin call at Lehman. Lehman contacted Hankins about the margin call. Hankins

23 did not respond to Lehman's inquiries and Tenet did not deposit assets into the account to meet the

24 margin call on a timely basis.

25       35. On March 1,2005, because of Tenet's failure to timely satisfy the margin call,

26 Lehman terminated its relationship with Tenet. Lehman never informed Plaintiffs that Tenet had a

27 margin call. The same day Lehman terminated Tenet, Plaintiff Verona and Plaintiff Profit Sharing

28 Plan invested a total of $2,256,000 in the Opportunities Fund, based upon the continuing material

COMPLAINT

mis-representations and concealment of material facts.

2      36. On or about May 7th, 2005, Lehman (through its authorized agent and Senior

3   Executive, William Price), acknowledged Plaintiffs' investments in the Opportunities Fund and

4   made vague general statements regarding his regret in having promoted Tenet. However, Plaintiffs

5   were never informed of Tenet's margin calls at Lehman, Tenet's failure to satisfy the margin calls,

6   and Lehman's termination of its prime broker relationship with Tenet. Further, at no later time did

7   Price or anyone at Lehman or anyone at Olympia disclose the margin calls to Plaintiffs or that

8   Lehman had terminated Tenet.

9      37. The holder ofa "short" position believes the price ofa security will decrease in

10   the near future. To take advantage of this projected price decline, the account holder sells those

II   securities "short." The holder does so by borrowing shares of the company from a broker-dealer

12   and selling those borrowed shares to a third party at the current price. The borrower must thereafter

13   "repay" the lending brokerage firm with an equal number of shares at a specified date. If the short

14   seller is correct, and the price of the shares does soon drop, he can buy the shares on the open

15   market at the lower price and "repay" the brokerage firm with cheaper shares, resulting in a profit

16   to the borrower. If the short seller does not hold the shares elsewhere, or does not otherwise hedge

17   its risk by owning or purchasing some form of the position with a value expected to move in the

18   opposite direction of the shorted securities, the short position is characterized as "naked."

19      38. Despite the statements in the Tenet Pitch Book, the Opportunities Fund's Sales

20   Information materials and the statements made by Hankins that the fund's investment strategy was

21   to preserve capital and mitigate risk through diversification of investments and to be fully hedged

22   against directional activities of anyone stock, Hankins and Tenet took no steps to hedge against the

23   risk of increases in the share price of Google. The concentrated naked shorting of Goggle shares

24   was completely contrary to the investment parameters represented by Hankins and Tenet. The use

25   of 450% margin was contrary to the represented investment strategy.

26      39. To hold such naked short positions in the Opportunities Fund without

27   accompanying offsetting hedging positions was entirely contrary to and an extreme departure from

28   the investment strategy as represented by Hankins and Tenet.

COMPLAINT                                    _o _

2  Opportunities Fund's liabilities. Upon information and belief, as of May 31,2005, the fund had

3  more than $72 Million in liabilities due to having borrowed a significant number of Google shares

4  to sell short. Since inception, the Fund has lost a total of approximately $20 Million as result of the

5  Google short sales.

6       41. Olympia is a professional third party fund administrator and reporting organization

7  engaged by Tenet and Hankins to report to investors in the Opportunities Fund regarding the

8  Funds' net asset value and other related information. Olympia is disclosed in the Opportunities

9  Fund Offering materials as the administrator for the Opportunities Fund. At all times relevant

10  herein Olympia was acting as the agent of Tenet and Hankins. Tenet and Olympia entered into an

II  agreement pursuant to which Olympia would prepare monthly or periodic reports of the net asset

12  value and other information concerning the Opportunities Fund for the benefit of its investors,

13  including Plaintiffs. Plaintiffs were third party beneficiaries of this agreement and Olympia knew

14  that Plaintiffs relied upon the reports or should have known that Plaintiffs would rely upon the

IS  reports.

16       42. Upon information and belief, on or about April 18,2005, Olympia knew or should

17  have known that Hankins was reporting false performance data. Olympia sent Hankins an e-mail

18  advising Hankins that the performance data in Tenet's marketing materials was contrary to

19  Olympia's performance data for the Opportunities Fund. Further, Olympia knew or should have

20  known that Tenet had earlier (February 1,2005) incurred a margin call at Lehman and that Lehman

21  had terminated its prime broker relationship with Tenet over Tenet's failure to satisfy timely the

22  margin call. Olympia knew or should have known that Tenet was employing 450% margin.

23  Olympia knew or should have known Plaintiffs were investing substantial amounts in the

24  Opportunities Fund, as set forth above, and knew or should have known that Plaintiffs relied upon

25  Olympia for accurate and timely reporting of the net asset value and other information regarding the

26  Fund. At no time did anyone at Olympia advise or alert anyone at any Claimant as to the fraudulent

27  activities being conducted by Hankins and Tenet regarding the Opportunities Fund.

28       43. In early May 2005, Hankins and Tenet instructed Olympia, or Hankins, Tenet and

rOMPLAINT

Olympia entered into an agreement whereby Olympia would not prepare or would delay reports

2   concerning the performance of the Opportunities Fund for April 2005. Pursuant to those

3   instructions and agreement, Olympia did not report the net asset value and related information for

4   the Opportunities Fund for the month of April 2005 to investors in the Opportunities Fund,

5   including Plaintiffs. Had Olympia prepared and forwarded the reports or not intentionally withheld

6   or delayed in their preparation, the decline in the net asset value of the fund would have been

7   apparent, Tenet's losses during April 2005 would have been disclosed (due to trades in Google), it

8   would have been apparent that Tenet was materially deviating from its represented investment

9   strategy, Plaintiffs would not have made additional investments in May 2005, and Plaintiffs could

10  have taken appropriate protective action.

11        44. As set forth above, in addition to the amounts already invested by them, on or about

12  May 5th. 2005, Plaintiffs Onshore Fund, the Offshore Fund and the Return Fund directed RBC to

13  invest a total of $4,000,000 in the Opportunities Fund.

14        45. In its capacity as administrator of the Opportunities Fund, Olympia undertook an

15  obligation to prepare and to forward accurate and timely reports to investors regarding the activities

16  of the Opportunities Fund. Olympia intended that Plaintiffs would rely upon the reports and knew

17  or should have known that Plaintiffs would so rely upon the reports. Rather than fulfill its

18  obligations to Plaintiffs and knowing that Tenet and Hankins had engaged in the wrongful activities

19  statcd above, Olympia entcred into an agreement with Tenet and Hankins not to prepare and or to

20  withhold the reports from investors thereby preventing Plaintiffs from learning of the transactions

21  in Google, the 450% margin employed, the significant decline in net asset value, and the significant

22  losses. Had Olympia prepared and forwarded the reports consistent with its obligations to

23  Claimants and as required under its agreement with Tenet as the Funds' administrator, Tenet's

24  wrongful activities would have been disclosed and Plaintiffs would have been able to take

25  appropriate action, and additional investments in Tenet would have been avoided and losses

26  prevented.

27

28

COMPLAINT

### FIRST  CAUSE  OF  ACTION

(Against  Defendants  Tenet  and  Hankins)

Violation  of the  Investment  Advisers  Act of  1940 (15  U.S.C.  ~  80b- I *el seo.)*

46.  Plaintiffs  repeat,  reallege  and  incorporate  herein  by this  reference  all of the

allegations  set forth in paragraphs  I - 45,  inclusive  of this  Complaint,  as if fully set forth herein.

47.  Section  202( II)  of the  Investment  Advisers  Act of 1940 ("Advisers  Act"),  15

U.S.C.  § 80b-2(ll),  defines  investment  advisers  as any person  who,  for compensation,  engages  in

the business  of advising  others  as to the value  of securities  or as to the advisability  of investing  in,

purchasing,  or selling  securities.  Section  206 of the Advisers  Act,  15 U.S.c.  § 80b-6,  provides  in

pertinent  part:

> "It shall  be unlawful  for any  investment  adviser,  by use of the  mails  or any
> means  or instrumentality  of interstate  commerce,  directly  or indirectly-
> (I)       to employ  any device,  scheme,  or artifice  to defraud  any client  or
> prospective  client ...  "

48.  Defendants  Hankins  and Tenet  are investment  advisers  as that term  is defined  in

Section  202(11)  of the Advisers  Act.

49.  Defendants  have  received  consideration  from  the Plaintiffs  for providing

investment  advice  and management  to Plaintiffs.

50.  Defendants,  by use of the instrumentalities  of interstate  commerce,  or of the mails,

employed  devices,  schemes  and artifices  to defraud  Plaintiffs  as alleged  above.

51.  Plaintiffs  have been  damaged  as a result  of Defendants'  violation  of the

Advisers  Act.

WHEREFORE,  Plaintiffs  pray for judgment  as hereinafter  set forth:

### SECONf)  CAUSE  OF  ACTION

(Against  Defendants  Tenet  and  Hankins)

California  Investment  Adviser  Fraud

52.  Plaintiffs  repeat,  reallege  and  incorporate  herein  by this  reference  all of the

COMPLAINT

allegations set forth in paragraphs I - 51 inclusive of this Complaint, as if fully set forth herein.

53. Defendants are investment advisers as that term is defined in California Corporations Code Section 25009.

54. In engaging in the conduct described, Defendants recklessly, knowingly and with intent to defraud violated and continue to violate the California Corporate Securities Law of 1968, California Corporations Code § 25000 *el seq.,* in that they have received consideration from the Plaintiffs for providing investment advice and management to Plaintiffs, and they have and continue to:

     a.    employ devices, schemes and artifices to defraud Plaintiffs; and

     b.    engage *in* transactions, practices and courses of business that both operate and would operate as a fraud and deceit upon Plaintiffs.

55. By operation of the foregoing statute, by reason of Defendants' reckless, knowing and intentionally fraudulent conduct, Defendants are liable to Plaintiffs for legal and equitable relief, including rescission, actual damages, interest at the statutory rate, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

**THIRD** CAUSE OF ACTION

(Against Defendants Tenet and Hankins)

Tennessee Investment Advisory Fraud

Section 48-2-122(C), T.C.A. for Violation of Section 48-2-12I(B), T.C.A.

56. Plaintiffs repeat, reallege and incorporate herein by this reference all of the allegations set forth in paragraphs I - 55, inclusive of this Complaint, as if fully set forth herein.

57. In engaging in the conduct described, Defendants willfully violated and continue willfully to violate Section 48-2-121(b), T.C.A. in that they have received consideration from the Plaintiffs for providing investment advice and management to Plaintiffs, and they have and continue to:

     a.   employ devices, schemes and artifices to defraud Plaintiffs; and

     b.   engage in acts, practices and courses of business that both operate and would operate

COMPLAINT

as a fraud and deceit upon Plaintiffs.

58. By operation of Section 48-2-122(c), T.C.A., by reason of Defendants' willful violations of Section 48-2-121(b) T.C.A., Defendants are liable to Plaintiffs for the damages sustained.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

## FOURTH CAUSE OF ACTION

(Against Defendants Tenet and Hankins)

## Breach of Fiduciary Duty

59. Plaintiffs repeat, reallege and incorporate herein by this reference all of the allegations set forth in paragraphs I - 59, inclusive of this Complaint, as if fully set forth herein.

60. The relationship of Defendants with Plaintiffs was such that the Defendants were in control of Plaintiffs' funds. Defendants owed Plaintiffs a duty to act in the highest good faith in handling their investments. _Se_ Duffy v. Cavalier, 215 Cal.App.3d 1517, 1533-34 (1989); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 269 (3d Cir. 1998); Twomey v. Mitchum, Jones & Templeton, Inc., 262 Cal.App.2d 690 (1968); Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 461 F.Supp. 951 (E.D. Mich. 1978).

61. As fiduciaries, Defendants were required to disclose material facts to Plaintiffs' regarding their investments and were required not to take action contrary to Plaintiffs' interest. Defendants were required to act with the loyalty to Plaintiffs.

62. Defendants breached their fiduciary duty to Plaintiffs by their conduct described above, including making material representations and omissions to Plaintiffs regarding their investments. Defendants acted in a manner designed to promote their interests to the detriment of Plaintiffs.

63. As a result of Defendants' and each of their breaches of fiduciary duty, Plaintiffs have been damaged as alleged below.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

COMPLAINT

2 **FIFTH** CAUSE OF ACTION

3 (Against Defendants Tenet and Hankins)

4 Fraudulent Misrepresentation

5       64. Plaintiffs repeat, reallege and incorporate herein by this reference all of the

6 allegations set forth in paragraphs I - 63, inclusive of this Complaint, as if fully set forth herein.

7       65. Defendant Hankins was a controlling person of Defendant Tenet Opportunities

8 Fund, and in doing the things herein alleged was acting with the authority and consent of the

9 Opportunities Fund and Tenet.

10       66. Defendants Tenet and Hankins were engaged to provide investment advisory

II services to Plaintiffs.

12       67. In connection with providing such investment advisory services, Defendants made

13 material misrepresentations to Plaintiffs, and omitted to state material facts necessary to make the

14 statements made not misleading, as set forth in paragraphs 21, 22, 23 and 24, set forth above.

15       68. At the time the representations were made regarding Tenet and the Opportunities

16 Funds, they were false, in that Tenet and Hankins:

17       (a) Did not use a fully hedged trading strategy in managing Plaintiffs' accounts;

18       (b) Did not adhere to the strategies in the Pitch Book;

19       (c) Did not manage the account in the best interests of Plaintiffs and did not invest

20 consistent with Plaintiffs investment objectives and risk tolerance;

21       (d) Invested more that 15% of Plaintiffs' accounts in one high risk stock-Google- and

22 severely concentrated the investments in the Opportunities Fund in Google;

23       (e) Had not achieved 15-20% return under all market conditions;

24       (I) Invested in a manner that caused extreme volatility;

25       (g) Tenet did not follow a strategy of investing in "synthetic convertible bond

26 arbitrage;" and,

27       (h) In 2004, the Opportunities Fund reported a 24% loss.

28       69. Plaintiffs were ignorant of the falsity of the representations and believed them to be

true. Plaintiffs reasonably relied on the representations and misleading statements. In reasonable

and justifiable reliance on said representations, Plaintiffs invested substantial monies with Tenet

and Hankins.

70. Defendants knew the representations were false and intended that Plaintiffs would rely on the false representations and misleading statements.

71. As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs have been damaged.

72. The conduct of Defendants was an intentional misrepresentation of a material fact known to the Defendants with the intention on the part of the Defendants of damaging Plaintiffs, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

## SIXTH CAUSE OF ACTION

(Against Defendants Tenet and Hankins)

### Negligent Misrepresentation

73. Plaintiffs repeat, reallege and incorporate herein by this reference all of the allegations set forth in paragraphs I - 72, inclusive of this Complaint, as if fully set forth herein.

74. Defendants were engaged in providing investment advisory services to Plaintiffs.

75. In connection with providing such investment advisory services, Defendants negligently made material misrepresentations, which were without reasonable grounds for believing them to be true, and omitted to state material facts necessary to make the statements they made not misleading, as set forth above including that Hankins and Tenet:

(a) Did not use a fully hedged trading strategy in managing Plaintiffs' accounts;

(b) Did not adhere to the strategies in the Pitch Book;

(c) Did not manage the account in the best interests of Plaintiffs and did not invest consistent with Plaintiffs' investment objectives and risk tolerance;

(d) Invested more that 15% of Plaintiffs' accounts in one high risk stock-Google- and severely concentrated the investments in the Opportunities Fund in Google;

(e) Had not achieved 15-20% return under all market conditions;

rOMPl AINT

(f)  Invested  in a manner  that caused  extreme  volatility;

2                    (g)  Tenet  did not follow  a strategy  of investing  in "synthetic  convertible  bond

3     arbitrage;"  and,

4                    (h)  In 2004, the Opportunities  Fund reported  a 24% loss.

5                    76.  Plaintiffs  were  ignorant  of the falsity  of the representations  and believed  them  to be

6     true. Plaintiffs  reasonably  relied  on the representations  and misleading  statements.   In reasonable

7     and justifiable  reliance  on said representations,  Plaintiffs  invested  substantial  monies  with Tenet

8     and Hankins.

9                    77.  Defendants  intended  that Plaintiffs  rely on said representations  and misleading

10    statements,  and act in reliance  on said misrepresentations.

II                    78.  As a proximate  result of the negligent  misrepresentations  of Defendants,  and each

12    of them, as herein  alleged,  Plaintiffs  have been damaged  in a sum according  to proof.

13                   WHEREFORE,   Plaintiffs  pray for judgment  as hereinafter  set forth:

14                              <u>SEVENTH   CAUSE  OF  ACTION</u>

15                         (Against   Defendants   Tenet  **and** Hankins)

16                                   <u>Breach  of Contract</u>

17                   79.   Plaintiffs  repeat,  reallege  and incorporate  herein  by this reference  all of the

18    allegations  set forth in paragraphs  I - 78, inclusive  of this Complaint,  as if fully set forth herein.

19                   80.   In connection  with being retained  to provide  investment  advisory  services  to

20    Plaintiffs  and in connection  with Plaintiffs'  Investments  in the Opportunities  Fund, Defendants

21    entered  into a contract  with Plaintiffs  whereby  Defendants  agreed  and were  bound  to perform  their

22    obligations  in conformity  with  state and federal  laws, and in conformity  with the parties'

23    agreements.

24                   81.  Defendants  have breached  their agreement  with Plaintiffs  by the acts and omissions

25    set forth above  and by making  material  misrepresentations,   material  omissions,  and in violating

26    state and federal  law, and in failing to disclose  material  information  to Plaintiffs  regarding  their

27    investments.  As a proximate  result of Defendants'  breach  of contract  with Plaintiffs,  Plaintiffs  have

28    sustained  damages  as set forth below.

COMPLAINT

WHEREFORE,  Plaintiffs pray for judgment  as hereinafter  set forth:

## EIGHTH   CAUSE  OF  ACTION

(Against  Defendants  Tenet  and Hankins)

### Unjust Enrichment

82.  Plaintiffs repeat, reallege and incorporate  herein by this reference  all of the allegations  set forth in paragraphs  1- 81, inclusive of this Complaint,  as if fully set forth herein.

83. A benefit  was conferred  on Defendants  by Plaintiffs  as set forth herein, and Defendants  were also paid commissions  in connection  with services  purportedly  rendered to the Plaintiffs.

84. The benefit  was appreciated  by Defendants.  It would  inequitable  for Defendants  to retain those benefits  without  payment to Plaintiffs.  Plaintiffs  are entitled  to damages  as set forth below.

WHEREFORE,   Plaintiffs  pray for judgment  as hereinafter  set forth:

## NINTH   CAUSE  OF  ACTION

(Against  Defendant  Olympia  Capital  Associates,  LP)

### Breach  of  Contract-Third   Party Beneficiary

85.  Plaintiffs repeat, reallege and incorporate  herein by this reference  all of the allegations  set forth in paragraphs   1 - 84, inclusive  of this Complaint,  as if fully set forth herein.

86.  Tenet, the Opportunities  Fund, and Olympia  entered  into an agreement  whereby, among other things, Olympia  agreed and undertook  to prepare  and send periodic  reports of the net asset value and related  information  concerning  the Opportunities  Fund to Plaintiffs  and other investors  in the Opportunities  Fund.

87.  The Agreement  and Olympia's  obligations  thereunder  were intended  to benefit Plaintiffs, among others. Hankins, Tenet, the Opportunities  Fund and Olympia  knew or should have known Plaintiffs  relied upon the reports concerning  the Fund.

88. At the times set forth herein above, Olympia  breached the Agreement  and its obligations  to Plaintiffs  by failing and or refusing  to prepare  and send the periodic  reports  on a

COMPLAINT

timely basis, as required under the Agreement.

2      89. Plaintiffs have been damaged by Defendant Olympia's breach of the Agreement in

3 an amount to be proven at trial.

4      WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

5                          TENTH CAUSE OF ACTION

6      (Against Defendants Olympia Capital Associates, **LP,** Tenet and Hankins)

7                          Conspiracy to Defraud

8      90. Plaintiffs repeat, reallege and incorporate herein by this reference all of the

9 allegations set forth in paragraphs I - 89, inclusive of this Complaint, as if fully set forth herein.

10      91. Olympia is the fund administrator for the Opportunities Fund. Olympia provided

II administrative and related services to the Opportunities Fund, including, but not limited to,

12 preparing and forwarding periodic net asset values and related Fund information to investors in the

13 Opportunities Fund, including Plaintiffs.

14      92. On or about April 18, 2005, Olympia sent Hankins an e-mail advising him that the

15 performance data in Tenet's marketing materials was contrary to Olympia's performance data for

16 the Opportunities Fund. Olympia knew or should have known that Tenet was deviating from its

17 stated investment strategy and had incurred substantial losses a result of concentrated naked short

18 positions on 450% margin in Google shares.

19      93. In or about April 2005, Olympia willfully and knowingly conspired with defendants

20 Tenet and Hankins to refrain from preparing and forwarding to Plaintiffs the net asset value and

21 related information for the Opportunities Fund for the month of April 2005 in order to conceal from

22 Plaintiffs the wrongful activities of Tenet and Hankins in the Fund, including the decline in net

23 asset value.

24      94. Plaintiffs are informed and believe that the last overt act in pursuance of the

25 conspiracy occurred in April of2005, when Olympia withheld or did not prepare and or forward

26 net asset and related information for the Opportunities Fund. Had Olympia prepared and forwarded

27 the reports, the funds losses during April 2005 due to trades in Google would have been disclosed,

28 it would have been apparent that Tenet was materially deviating from its represented strategy,

Plaintiffs  would  not  have  made  additional  investments  in  May  2005.

2      95.  As set forth above,  in addition  to the amounts  already  invested  by them, on or about

3  May 5th, 2005,  Plaintiffs  Onshore  Fund,  Offshore  Fund and Return  Fund directed  RBC to invest  a

4  total of $4,000,000  in the Opportunities  Fund.

5      96.  Olympia owed Plaintiffs an obligation to prepare and forward accurate and timely

6  reports to investors.  Olympia  had undertaken  to prepare  the reports  and Olympia  knew that

7  Plaintiffs,  among others,  relied upon the reports.  Olympia  conspired  with Tenet and Hankins to

8  conceal the Funds  losses and the decline  in net asset value.  Had Olympia  prepared  and forwarded

9  the reports as required  under the agreement  with Tenet and consistent  with its obligations  as

10  administrator  of the Fund, the Fund's  declinc  in net asset value  would have been disclosed,  Plaintif

II  would  have taken appropriate  protective  action, additional  investments  in Tenet would  have been

12  avoided and the losses prevented.  Olympia and Tenet and Hankins  agreed and conspired  to refrain

13  from preparing  and forwarding  or withholding  the reports  in an effort to wrongfully  conceal  Tenet's

14  and Hankins'  wrongful  activities.

IS      WHEREFORE,  Plaintiffs  pray for judgment  as hereinafter  set forth.

16                  F:LF:VF:NTH  CAUSE,  OF  ACTION

17          (Aeainst   Defendants   Olympia  Capital  Associates,  LP)

18                  Fraudulent  Misrepresentation

19      97.  Plaintiffs  repeat, reallege and incorporate  herein by this reference  all of the

20  allegations  set forth in paragraphs  I - 96, inclusive  of this Complaint,  as if fully set forth herein.

21      98.  Defendant  Olympia  represented  to Plaintiffs  that it would  timely  prepare  and send

22  accurate periodic  reports regarding  the net asset value and related information  concerning  the

23  Opportunities  Fund to Plaintiffs  and other investors.

24      99.  In connection  with making the representations  to Plaintiffs  that it would accurately

25  report net asset and related information  concerning  the Opportunities  Fund, Defendant  Olympia

26  made material misrepresentations,   and omitted to state material  facts necessary  to make the

27  statements  they made not misleading,  as set forth above.

28      100.  The aforesaid  representations  were false.  On or about April  18,2005,  Olympia

COMPLAINT

1   sent Hankins an e-mail advising him that the performance data in Tenet's marketing materials did

2   not reconcile with Olympia's performance data for the Opportunities Fund.

3        101. In early May 2005, despite Olympia's knowledge of substantial problems

4   concerning the activities of the Opportunities Fund, Olympia did not report the trading activities for

5   the Opportunities Fund for the month of April 2005, in order to conceal the activities in the fund

6   and to conceal substantial losses as result of inappropriate transactions.

7        102. Plaintiffs reasonably relied on said misrepresentations and misleading statements

8   to the effect that defendant Olympia would forward true and accurate reports to Plaintiffs, among

9   others, concerning the funds activities.

10       103. Defendant Olympia intended that Plaintiffs rely on said misrepresentations and

II   misleading statements.

12       104. Had Olympia prepared and forwarded accurate and timely reports concerning the

13   Fund's activities as it had agreed to do and as it represented to Plaintiffs it would do, the Fund's

14   losses during April 2005 due to trades in Google would have been disclosed, it would have been

IS   apparent that Tenet was materially deviating from its represented investment strategy, Plaintiffs

16   would not have made additional investments in May 2005, and Plaintiffs could have taken

17   appropriate action in connection with Tenet's and Hankins' wrongful activities.

18       105. As set forth above, in addition to the amounts already invested by them, on or

19   about May 5th. 2005, Plaintiffs Onshore Fund, Offshore Fund and Return Fund directed RBC to

20   invest a total of$4,000,000  in the Opportunities Fund.

21       106. Plaintiffs have been damaged by Defendant Olympia's conduct in an amount to be

22   proven at trial.

23            WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

24                      TWELFTH  CAUSE OF ACTION

25            (Against Defend:mts Olympia Capital Associates, LP)

26                      Negligent Misrepresentation

27       107. Plaintiffs repeat, reallege and incorporate herein by this reference all of the

28   allegations set forth in paragraphs I - 106, inclusive of this Complaint, as if fully set forth herein.

COMPl.AINT

108. Defendant Olympia agreed to provide services to administer the Opportunities

2   Fund for Tenet and Hankins and as part of such services to prepare and forward accurate and timely

3   periodic reports regarding the fund and its activities to the funds' investors, including Plaintiffs.

4         109. In connection with providing such services to administer the Opportunities Fund,

5   Olympia negligently made material misrepresentations, and negligently omitted to state material

6   facts necessary to make the statements they made not misleading, as set forth herein.

7         110. Plaintiffs reasonably and justifiably relied on said misrepresentations and

8   misleading statements.

9         III. Defendant Olympia intended that Plaintiffs rely on said representations and

10   misleading statements.

II         112. Plaintiffs have been damaged by Defendant Olympia's negligent conduct.

12         WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

13                    THIRTEENTH   CLAIM   OF   RELIEF

14              (Against Defendants   Olympia Capital Associates, LP)

15                              Negligence

16         113. Plaintiffs repeat, reallege and incorporate herein by this reference all of the

17   allegations set forth in paragraphs 1 - 112, inclusive of this Complaint, as if fully set forth herein.

18         114. By virtue of Olympia's activities and recommendations to Plaintiffs, Olympia

19   owed Plaintiffs a duty to exercise reasonable care.

20         115. By virtue of the acts complained of above, Defendant Olympia breached its duty o

21   reasonable care to PlaintifTs and acted carelessly, negligently and *lor* recklessly, so as to expose

22   Plaintiffs to an unreasonable risk of harm. Defendant Olympia knew, or in the exercise of

23   reasonable care should have known, its actions and omissions posed an unreasonable risk of harm

24   of which the Plaintiffs were unaware.

25         116. Had Defendant Olympia exercised reasonable care Plaintiffs would not have been

26   damaged, as set forth herein.

27         117. Plaintiffs have been damaged by Defendant Olympia's conduct in an amount to be

28   proved at trial.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth

## FOURTEENTH CAUSE OF ACTION

(Against Defendants Olympia Capital Associates, LP)

Aidor/Abettor  Liability-Violation  of Cat Corn. Code Section 25504

118.   Plaintiffs repeat, reallege and incorporate herein by this reference all of the allegations set forth in paragraphs 1 - 117, inclusive of this Complaint, as if fully set forth herein.

119. California Corporations Code Section 25504 provides *"every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person. , ."*

120. Defendant Olympia was the agent for Tenet and Hankins, and is liable for aiding and abetting the fraud of Hankins and Tenet, because it was aware of the fraud, helped conceal it, and proximately caused the primary harm to Plaintiffs. Olympia knowingly and substantially advanced the commission of the fraud by wrongfully agreeing with Tenet and Hankins to refrain from preparing and forwarding the reports regarding the activities of the Opportunities Fund for the month of April 2005. As a proximate result of Olympia's conduct, Plaintiffs incurred damages as alleged herein.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth:

## I'M YER FOR RELIEF

I.   Compensatory damages in the sum of $ 11,629,000;

2.   General damages in a sum according to proof at trial;

3.   Special damages in a sum according to proof at trial;

4.   Treble Damages;

5,  Prejudgment and Post judgment interest;

6. Rescission of the Plaintiffs' investments pursuant to Cal. Corps. Code Section 25501, which entitles Plaintiffs to receive the purchase price of the subject security plus interest thereon at the legal rate;

7.  Rescission of the investment adviser agreement between Plaintiffs and Tenet;

8.  Consequential damages relating to Plaintiffs' loss of reputation, business and ongoing management fees;

9.  Reasonable and necessary attorneys fees, costs and expenses, if permitted by law or contract;

10.  Such other and further relief as the Panel deems appropriate under the circumstances.

Plaintiffs demand a trial on the issues set forth above.


DATED:  December  29,2005          BALDWIN & MCNAMARA


                                    *By:* /s/ PATRICK BALDWIN
                                    PATRICK BALDWIN
                                    Attorneys for Plaintiffs
                                    Verona Partners, LLC; Golden Gate VI'
                                    Multi Strategy Fund, LP; Golden Gate VI'
                                    Multi Strategy Offshore Fund LTO; Golden
                                    Gate Financial Group LLC Profit Sharing
                                    40 I K Plan and Trust dated 6/21/2002; and,
                                    Orion VI' Absolute Return Fund, LP


DATED:  December 29, 2005           LAW OFFICES OF GEORGE P. ESHOO


                                    *By:* /s/ GEORGE P. ESHOO
                                    GEORGE P. ESHOO
                                    Attorneys for Plaintiffs
                                    Verona Partners, LLC; Golden Gate VI'
                                    Multi Strategy Fund, LP; Golden Gate VI'
                                    Multi Strategy Offshore Fund, LTO; Golden
                                    Gate Financial Group LLC Profit Sharing
                                    40lK Plan and Trust dated 6/21/2002; and
                                    Orion VI' Absolute Return Fund, LP


COMPLAINT