UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VERONA PARTNERS, LLC, et al.,

        Plaintiffs,

     v.

TENET CAPITAL PARTNERS
CONVERTIBLE OPPORTUNITIES
FUND LP, et al.,

        Defendants.

_____/

No. C 05-5369 PJH

**ORDER GRANTING MOTION
TO DISMISS**

    The motion of defendant Olympia Capital Associates, LP ("Olympia") to dismiss the claims asserted against it in the first amended complaint came on for hearing before this court on August 23, 2006.  Plaintiffs appeared by their counsel Patrick Baldwin and George Eshoo, and Olympia appeared by its counsel Stephen D. Hibbard.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

    Plaintiffs Verona Partners LLC ("Verona"); Golden Gate VP Multi Strategy Fund, LP ("GG Onshore Fund"); Golden Gate VP Multi Strategy Offshore Fund, Ltd. ("GG Offshore Fund"); and Orion VP Absolute Return Fund, LP ("Orion Return Fund") are "funds of hedge funds."  Plaintiff Golden Gate Financial Group LLC Profit Sharing 401k Plan and Trust ("GG

pension fund") is an employee pension plan.  Plaintiffs allege violation of federal securities

laws and also assert state law claims of breach of contract, fraud, and negligence.

Defendants are Tenet Capital Partners Convertible Opportunities Fund, LP ("the

Fund"); Tenet Asset Management, LLC ("Tenet Management"); Jon E. Hankins ("Hankins");

and Olympia.  The Fund, which was founded by Hankins in 2004, was a hedge fund, and

was structured as a limited partnership pursuant to a "Partnership Agreement."  Tenet

Management served as the general partner of the Fund and made the Fund's investment

decisions.  Hankins was the principal of Tenet Management and its managing member.

Institutional investors and wealthy individuals purchased limited partnership interests

in the Fund, pursuant to a Private Placement Memorandum ("PPM") dated March 2004,[1]

which explained the Fund's structure, investment objectives, and risks.  Plaintiffs do not

claim that they themselves purchased limited partnership interests.  Rather, they assert

that they "invested" in the Fund by entering into "Hedge Fund Derivative" contracts with

"Counterparties," who, in turn, were the actual limited partners.

Plaintiffs described their usual method of investing as follows:

> Plaintiffs use the services of financial institutions ("Counterparties") to
> assemble a "reference basket" of hedge funds.  Plaintiffs instruct and direct
> the Counterparties as to the specific hedge funds to invest in or "place" in the
> "reference basket" on [p]laintiffs' behalf, as well as the timing and amounts of
> the investments.  As part of the transaction, [p]laintiffs then purchase an over-
> the-counter derivative option ("Hedge Fund Option") (collectively "Hedge
> Fund Derivative(s)") from the Counterparties based on the "reference basket."
> The value of the Hedge Fund Derivative is directly based upon and
> proportionate to the "reference basket" and does not trade independent of the
> "reference basket."  Plaintiffs adjust the composition of the reference basket
> as they deem appropriate.  Plaintiffs use the services of the Counterparties
> for leverage and for financing purposes.

FAC ¶ 16.  The "Counterparties" identified in the FAC are RBC Capital Markets

Corporation, agent for Royal Bank of Canada; Wachovia Capital Markets, LLC, agent for

---

[1] The PPM limited the sale of limited partnership interests to "Accredited Investors (as such term is identified under the federal securities laws)."  PPM at 1.  The term "Accredited Investors" is defined in Rule 501 of Regulation D, promulgated under the 1933 Securities Act, as – broadly speaking – financial institutions, ERISA plans, larger business entities, higher-net-worth individuals and trusts.  17 C.F.R. § 230.501.

1    Wachovia Bank, N.A.; and Bank of America Securities, LLC, agent for Bank of America,

2    N.A.

3          The Partnership Agreement, which was attached as Exhibit A to the PPM, provided

4    that the business/affairs of the partnership would be managed exclusively by the general

5    partner, Tenet Management.  The Partnership Agreement authorized the general partner to

6    "select a management company . . . to aid and assist the [g]eneral [p]artner in managing

7    the Partnership by providing certain administrative services to the Partnership."  The

8    Partnership Agreement gave the general partner "the power, in its sole and absolute

9    discretion, to delegate some or all of the administrative bookkeeping functions relating to

10   the Partnership to an administrator or agent."

11         To this end, Tenet Management hired Olympia to serve as the professional fund

12   administrator for the Fund.  On April 1, 2004, Olympia and the Fund entered into an a

13   "Administration Agreement."  Pursuant to this agreement, Olympia, acting as an

14   independent contractor, provided personnel necessary to manage the business affairs of

15   the partnership.  Olympia performed services such as mailing account information to

16   investors, calculating the value of the Fund's assets, and preparing the Fund's financial

17   statements.  Olympia had no involvement with the investment decisions of the Fund.

18         Of particular significance to the present case, the Administration Agreement

19   provided that Olympia would

20         perform or supervise the performance of the following services . . .

21         (vi)    distribution of annual or other periodic reports to investors;

22         (vii)   preparing and maintaining such financial and accounting books and
23                 records as are necessary to support an annual independent audit of
                   the financial condition of the Partnership in order to comply with
24                 applicable law, and cooperation in such audit;

25         (ix)    responding to and communicating with investors and prospective
                   investors, and members of the general public (including publishing or
26                 furnishing the offering and withdrawal prices of the Interests); [and]
           . . .

27         (xi)    calculating on a monthly basis the Partnership's Net Asset Value, and
28                 capital account balances of the Limited Partners, as in accordance with
                   the valuation and accounting procedures designated from time to time

United States District Court
For the Northern District of California

1    by the then current Limited Partnership Agreement and the [PPM].

2   Administration Agr. ¶ 4(a)(vi), (vii), (ix), (xi) (emphasis added).

3       Plaintiffs claim that in May 2004, they received various "sales and promotional

4   materials" regarding Hankins, the Fund, and Tenet Management, which had been prepared

5   by Hankins and Tenet Management.  They claim that these promotional materials had been

6   prepared for dissemination to prospective investors in the Fund.

7       Plaintiffs assert that beginning in May 2004, and continuing throughout 2004,

8   Hankins made false statements to them in connection with proposed investments in the

9   Fund, and that Hankins knew the statements were false at the time he made them.  For

10   example, plaintiffs allege that Hankins stated that he would use only a fully hedged trading

11   strategy that limited an investor's exposure to market risk; that he would preserve capital

12   and mitigate risk through diversification; that he understood and would invest in a manner

13   consistent with plaintiffs' stated investment objective of preservation of capital and

14   moderate risk tolerance; that he would not invest a disproportionate amount in any single

15   issuer; that his return on investment was 32.5% in 2004; that he would provide consistent

16   returns in all types of markets; and that no one investment would compromise more than

17   5% of the Fund, and that all investments would be fully hedged.  FAC ¶ 24.

18       Plaintiffs allege that the statements made by Hankins were false at the time they

19   were made because, among other things, Hankins took no steps to hedge against the risk

20   of increases in the price of Google stock; the Google shares represented a concentration of

21   the Fund's assets; Hankins and Tenet had a 20% negative return in 2004, not a 32.5%

22   gain; and Hankins engaged in speculative concentrated trading strategies, not moderate-

23   risk hedged strategies.  FAC ¶ 25.

24       Plaintiffs assert that in its capacity as administrator of the Fund, Olympia knew or

25   should have known that on February 1, 2005, Tenet Management had incurred a margin

26   call at Lehman Brothers Capital and that Lehman had terminated its prime broker

27   relationship with Tenet Management because of the failure to satisfy the margin call.

28   Plaintiffs claim that Olympia knew or should have known that Tenet Management was

4

United States District Court
For the Northern District of California

employing a 450% margin; knew or should have known that plaintiffs were investing substantial amounts in the Fund; and knew or should have known that plaintiffs relied on Olympia for accurate and timely reporting of net asset value and other Fund information.

On April 18, 2005, Olympia sent Hankins an e-mail regarding certain "marketing/performance information" that had been sent by Tenet/Hankins' previous marketing firm to certain unidentified parties. The e-mail stated, in part,

> As you know the cover page reflects Olympia as being the administrator on the bottom right. The second page summary indicates that the numbers contained therein pertain to "Tenet Capital Partners Convertible Opportunities Fund, LP," yet those numbers do not reconcile with our numbers for that Fund. It appears from the material that the numbers contained in the second page summary may include certain other accounts managed by your management company, which are accounts Olympia does not administer. On the basis of the reference to Olympia on the first page, coupled with the title on the second page summary indicating that it pertains to Tenet Capital Opportunities Fund, L.P., we are concerned that the information and numbers contained in that summary could be viewed and relied on by the parties who received it as having been prepared by or otherwise verified as being correct by Olympia as independent administrator of the LP.
>
> At this juncture it is imperative that we determine exactly who this material was sent to and on how many occasions, i.e. was this sent out only one time for one month, or was it or something similar transmitted on several different occasions. Also were other reports with incorrect numbers transmitted and circulated?
>
> A possible resolution could be that any party that received the information should be notified that it was incorrect and that the numbers were not prepared by or verified by Olympia. It should be determined whether or not after having viewed these materials any investors subscribed into Tenet Capital Partners Opportunities Fund LP and if so it should be considered whether in addition to receiving letters clarifying that the information contained an error, those investors should also be given an opportunity to redeem.

Plaintiffs allege that as of April 18, 2005, the date of this e-mail, Olympia knew or should have known that Hankins was reporting false performance data.

Plaintiffs claim that during the period February 1 through May 5, 2005, they invested in the Fund as a result of and in reliance on the written and oral representations made by and or on behalf of Hankins, Tenet Management, and the Fund.

Based on the previously-cited provisions of the Administration Agreement, plaintiffs allege that Olympia and the Fund agreed that Olympia would prepare monthly or periodic reports of the net asset value and other information concerning the Fund for the benefit of

United States District Court

For the Northern District of California

1   the investors, including plaintiffs.  Plaintiffs allege that Olympia knew or should have known

2   that plaintiffs would rely on the periodic reports.

3        Plaintiffs assert, however, that in early May 2005, Hankins and Tenet Management

4   instructed Olympia to delay preparing reports regarding the performance of the Fund for

5   April 2005.  Plaintiffs assert that Olympia failed to report the net asset value and related

6   information for the Fund for April 2005 to investors in the Fund, including plaintiffs.

7   Plaintiffs allege that had Olympia delivered the reports in a timely fashion, they would not

8   have made the investments in the Fund that they made in May 2005 – the total of $4 million

9   that the GG Onshore Fund, the GG Offshore Fund, and the Orion Return Fund directed

10  RBC to invest in the Fund on May 5, 2005.

11       Ultimately, the Fund lost substantial value when Tenet Management took "short"

12  positions in Google stock, betting wrongly that the price of the stock would go down.

13  Plaintiffs claim to have lost more than $7 million.

14       On June 22, 2005, the Securities and Exchange Commission (SEC) filed an

15  emergency enforcement action in the Southern District of New York, against Hankins,

16  Tenet Management, and the Fund, seeking a restraining order to halt fraudulent conduct,

17  and also seeking the appointment of a temporary receiver over Tenet Management and the

18  Fund.  See SEC v. Hankins, (C-05-5808 (KMW) S.D.N.Y).  The court granted the request.

19       Over the course of the next nine months, the receiver liquidated the holdings of

20  Tenet Management and the Fund.  The assets remaining in the Fund were distributed to

21  the limited partners, and the court entered a final judgment in the case on March 23, 2006.

22  The court found Hankins liable for disgorgement of $252,805, together with prejudgment

23  interest in the amount of $3,792, and a civil penalty in the amount of $130,000.

24       Plaintiffs filed the present action on December 27, 2005, and filed the first amended

25  complaint ("FAC") on February 20, 2006.  In the FAC, plaintiffs allege sixteen causes of

26  action, six of which are asserted against Olympia:  violation of § 10(b) and § 20(a) of the

27  1934 Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5;

28  breach of contract – third party beneficiary; conspiracy to defraud; fraudulent

1   misrepresentation; negligent misrepresentation; negligence; and aider/abetter liability –

2   violation of California Corporations Code § 25504.

3        Plaintiffs filed a return of service for Olympia.  However, they have not filed a return

4   of service for Hankins, Tenet Management. or the Fund, and no appearance has been

5   entered for those three defendants.  At the hearing on the present motion, plaintiffs'

6   counsel stated that those defendants had not been served, and that plaintiffs had no

7   objection to dismissing the Fund and Tenet Management from the suit.  Accordingly, the

8   Fund and Tenet Management are DISMISSED.

9        On April 26, 2006, Hankins and his wife filed a Chapter 7 voluntary petition for

10  bankruptcy in the Eastern District of Tennessee.  (In re Hankins, 06-bk-30861, E.D.Tenn.)

11  That bankruptcy proceeding is ongoing.  At the hearing on the present motion, plaintiffs'

12  counsel stated that Hankins had filed for bankruptcy before plaintiffs could serve him with

13  the summons and complaint.  The court indicated that it was inclined to dismiss Hankins

14  from this action, and  plaintiffs' counsel responded by requesting 30 days in which to decide

15  whether plaintiffs would continue to proceed against Hankins.

16       The court finds that Hankins must be DISMISSED.  This action was filed on

17  December 27, 2005, more than eight months ago.  The Hankins filed their bankruptcy

18  petition exactly 120 days after the complaint was filed.  Federal Rule of Civil Procedure

19  4(m) provides, in part,

20
21       If service of the summons and complaint is not made upon a defendant within
         120 days after the filing of the complaint, the court, upon motion or its own
21       initiative after notice to the plaintiff, shall dismiss the action without prejudice
         as to that defendant . . . ; provided that if the plaintiff shows good cause for
22       the failure, the court shall extend the time for service for an appropriate
         period.
23

24  Fed. R. Civ. P. 4(m).  Plaintiffs admittedly failed to serve Hankins during the 120-day period

25  following the filing of the complaint, and never requested an extension of time in which to

26  serve him.  Moreover, when asked at the hearing, plaintiffs' counsel was unable to

27  articulate any good cause for the failure to serve, or any reason that the court should grant

28  an extension of time at this late date.

**United States District Court**
For the Northern District of California

1    **DISCUSSION**

2    A.    Legal Standard

3         1.    Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

4         A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

5    state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in

6    support of the claim which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S.

7    41, 45-46 (1957); Williamson v. Gen'l Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.), cert.

8    denied, 531 U.S. 929 (2000).  All allegations of material fact are taken as true and

9    construed in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d

10   1213, 1217 (9th Cir. 1996).

11        Review is generally limited to the contents of the complaint. Allarcom Pay

12   Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  However,

13   material that is properly presented to the court as part of the complaint may be considered

14   as part of a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

15   2001).  In addition, whether requested or not, the court may take judicial notice of facts that

16   are capable of accurate and ready determination by resort to sources whose accuracy

17   cannot be questioned. See Fed. R. Evid. 201; see also In re Silicon Graphics, Inc., Sec.

18   Litig., 183 F.3d 970, 986 (9th Cir. 1999).

19        2.    Federal Rule of Civil Procedure 9(b)

20        Generally, plaintiffs in federal court are required to give a short, plain statement of

21   the claim sufficient to put the defendants on notice. Fed. R. Civ. P. 8.  In actions alleging

22   fraud, however, "the circumstances constituting fraud or mistake shall be stated with

23   particularity." Fed. R. Civ. P. 9(b).  Under Rule 9(b), the complaint must allege specific

24   facts regarding the fraudulent activity, such as the time, date, place, and content of the

25   alleged fraudulent representation, how or why the representation was false or misleading,

26   and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec.

27   Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994).  Because the plaintiff must set forth what is

28   false or misleading about a particular statement, he must do more than simply allege the

**United States District Court**
For the Northern District of California

neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made.  Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999).

3.      Claims under the 1934 Securities Exchange Act

Section 10(b) of the Securities Exchange Act of 1934 provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).

Rule 10b-5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In order to state a claim under § 10(b) of the 1934 Act and Rule 10b-5, a plaintiff must allege (a) the use or employment of a manipulative or deceptive device or contrivance; (2) scienter, i.e., wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to as "transaction causation;" (5) economic loss; and (6) loss causation, i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss.  Simpson v. AOL Time Warner, 452 F.3d 1040, 1047 (9th Cir. 2006); see also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).  The misstatement or omission complained of must have been misleading; in the case of an omission, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."  Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988).

4.      The Private Securities Litigation Reform Act

It has long been established that claims brought under Rule 10b-5 and § 10(b) must

9

United States District Court

For the Northern District of California

1   meet the particularity requirements of Rule 9(b).  See In re Daou Sys. Inc. Sec. Litig., 411

2   F.3d 1006, 1014 (9th Cir. 2005).  In addition, the enactment of the Private Securities

3   Litigation Reform Act ("PSLRA") in 1995 altered pleading requirements for actions brought

4   under the 1934 Exchange Act.  Id.

5           The PSLRA was enacted to establish uniform and stringent pleading requirements

6   for securities fraud actions, and "to put an end to the practice of pleading 'fraud by

7   hindsight.'"  In re Silicon Graphics, 183 F.3d at 958.  The PSLRA heightened the pleading

8   requirements in private securities fraud litigation by requiring that the complaint plead both

9   falsity and scienter with particularity.  In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084

10  (9th Cir. 2002).  If the complaint does not satisfy these pleading requirements, the court,

11  upon motion of the defendant, must dismiss the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

12          Under the PSLRA – whether alleging that a defendant "made an untrue statement of

13  a material fact" or alleging that a defendant "omitted to state a material fact necessary in

14  order to make the statements made, in the light of the circumstances in which they were

15  made, not misleading" – the complaint must specify each statement alleged to have been

16  false or misleading, specify the reason or reasons why each such statement is misleading,

17  and, if an allegation regarding the statement or omission is made on information and belief,

18  state with particularity all facts on which that belief is formed.  15 U.S.C. § 78u-4(b)(1).[2]  If

19  the challenged statement is not false or misleading, it does not become actionable merely

20  because it is incomplete.  In re Vantive, 283 F.3d at 1085; Brody v. Transitional Hosp.

21  Corp., 280 F.3d 997, 1006 (9th Cir. 2002).

22          In addition – whether alleging that a defendant "made an untrue statement of

23  material fact" or alleging that a defendant "omitted to state a material fact" – the complaint

24  must, with respect to each alleged act or omission, "state with particularity facts giving rise

25  to a strong inference that the defendant acted with the required state of mind."  15 U.S.C.

26  § 78u-4(b)(2).  In the Ninth Circuit, the required state of mind is "deliberate or conscious

27

28          [2] Matters that are not alleged on personal knowledge are considered to be alleged on
    information and belief.  See In re Vantive, 283 F.3d at 1085 n.3.

**United States District Court**

For the Northern District of California

1    recklessness." In re Silicon Graphics, 183 F.3d at 979.

2        Because falsity and scienter in securities fraud cases are generally strongly inferred

3    from the same set of facts, the Ninth Circuit has incorporated the falsity and scienter

4    requirements into a single inquiry. No. 84 Employer-Teamster Joint Council Pension Trust

5    Fund v. America West Holding Co., 320 F.3d 920, 932 (9th Cir. 2003). In addition, when

6    considering whether plaintiffs have shown a strong inference of scienter, "the district court

7    must consider all reasonable inferences to be drawn from the allegations, including

8    inferences unfavorable to the plaintiffs." Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir.

9    2002) (noting the "inevitable tension . . . between the customary latitude granted the plaintiff

10   on a [12(b)(6)] motion to dismiss . . . and the heightened pleading standard set forth under

11   the PSLRA). In other words, the court must consider all the allegations in their entirety in

12   concluding whether, on balance, the complaint gives rise to the requisite inference of

13   scienter. Id.

14   B.    Olympia's Motion to Dismiss

15       In the tenth cause of action, plaintiffs allege that Olympia violated § 10(b) of the

16   1934 Exchange Act, and Rule 10b-5 promulgated thereunder. The basis of plaintiffs'

17   complaint against Olympia is the assertion that Olympia failed to provide plaintiffs with

18   monthly reports on the Fund's performance in a timely fashion. Olympia seeks an order

19   dismissing the claims asserted against it for failure to state a claim.[3]

20       Olympia argues that it owed plaintiffs no duty to disclose the allegedly omitted

21   information; and that because plaintiffs do not and cannot allege that Olympia made any

22   statements to them at all, it cannot be liable for making misleading statements or for

23   omitting to state material facts necessary to make other statements not misleading.

24   Olympia also asserts that the FAC fails to plead scienter and loss causation. Finally,

25   Olympia argues that plaintiffs are essentially accusing Olympia of aiding and abetting

26

27        [3] Although it is not clear from the allegations in the FAC, plaintiffs' counsel indicated at

28   the hearing that only the GG Onshore Fund, the GG Offshore Fund, and the Orion Return Fund assert claims against Olympia.

United States District Court

For the Northern District of California

1   Hankins' and Tenet Management's alleged violation of § 10(b) and Rule 10b-5, and asserts

2   that under <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164 (1994),

3   no private right of action exists for aiding and abetting a § 10(b) violation.

4   *Duty to disclose omitted information*

5   Olympia argues that it cannot be liable under § 10(b) or Rule 10b-5 for failure to

6   disclose information unless there is a legally cognizable duty to disclose the allegedly

7   omitted information.  Olympia contends that it had no such legally cognizable duty to

8   disclose, because plaintiffs were not limited partners and were therefore not "investors" in

9   the Fund.  Olympia also asserts that it had no obligation (or even a right) absent a directive

10  from the Fund's general partner to provide monthly statements to the Fund's

11  investors/limited partners; that it had no duty to provide statements by any particular date

12  within a month; that it had no duty to provide any report concerning the April 2005

13  performance by May 5, 2005; and that it had no generalized duty to warn plaintiffs

14  concerning the risks or advisability of investing in the Fund.

15  In opposition, plaintiffs assert that they have adequately alleged that they were

16  "investors" in the Fund.  They also suggest that they should be considered "investors"

17  because their "Hedge Fund Derivatives" contracts exposed them to the same type of risk

18  as a direct investment in the Fund.  They assert that Olympia's argument (that plaintiffs

19  were not investors because they were not limited partners) fails to take a "common sense

20  view" of the transactions.  They contend that they directed the counterparties to invest the

21  appropriate amount in the Fund, and that their use of counterparties to invest in the Fund

22  does not make them any less investors in the Fund.  They claim (without any supporting

23  facts) that Olympia knew the investments made by the counterparties had actually been

24  made by plaintiffs.

25  Plaintiffs also argue that the Administration Agreement obliged Olympia to distribute

26  annual and other periodic reports to "investors," not just to limited partners.  They assert

27  that because the Administration Agreement required Olympia to "calculate on a monthly

28  basis" the net asset value of the partnership, and to "respond to and communicate with"

United States District Court

For the Northern District of California

1   investors and prospective investors and members of the general public (including

2   publishing or furnishing the offering and withdrawal prices of the partnership Interests),

3   Olympia had an obligation to issue monthly reports to all "investors."  They also contend

4   that since a custom and practice of providing monthly reports had been established, upon

5   which Olympia knew investors would rely, it had an obligation to accurately and timely

6   prepare and forward the reports.

7        Both the Partnership Agreement and the PPM state that the way to invest in the

8   Fund (or "subscribe to the Fund") is to become a limited partner in the partnership.  The

9   court finds that the FAC alleges no facts showing that plaintiffs invested in the Fund or were

10  limited partners in the Fund.  Indeed, the FAC confirms that plaintiffs did not invest in the

11  Fund as limited partners, but rather, bought "Hedge Fund Derivative" contracts from

12  "Counterparties," including RBC and Bank of America.  Plaintiffs' "common sense view"

13  ignores the language of the Administration Agreement and the PPM, which, when read

14  together, define "investors" as "limited partners."  Because plaintiffs had no rights under the

15  Administration Agreement, the scope of Olympia's duties under the Administration

16  Agreement is irrelevant to the claims asserted in this case.

17       The Partnership Agreement was intended to cover only the relationship among the

18  partners – specifically, the relationship between Tenet Management (the general partner)

19  and the limited partners.  The Agreement states that it "is entered into . . . by and between

20  Tenet Asset Management, LLC, . . . (the "General Partner") . . . , Jon E. Hankins, as the

21  Initial Limited Partner, and other certain persons and entities who become limited partners

22  in accordance with the terms hereof ("the Limited Partners" which together with the General

23  Partner shall collectively be referred to as the "Partners").  Partnership Agr. at 1.  The

24  partnership was organized "to serve as a fund through which the assets of its Partners may

25  be utilized in investing and trading a wide variety of securities and financial instruments . . .

26  " Id.

27       The PPM states in the "Overview" that

28       [t]he Partnership was formed to pool investment funds of its investors (each a

13

1   "Limited Partner" and collectively, "Limited Partners;" and the General Partner
2   together with Limited Partners shall be referred to as "Partners") for the
    purpose of investing and trading in a variety of securities and financial
3   instruments, domestic and foreign, primarily focusing on convertible bonds
    and publicly traded equity securities. . . .

4   The Limited Partners, by pooling their assets in the Partnership, will be able
    to invest their funds in a portfolio of securities managed by the General
5   Partner that is seeking to maximize return while controlling risk.

6   PPM at 1 (emphasis added).  The PPM states that "the Partnership seeks to provide its

7   Limited Partners with superior and sustainable returns combined with effective risk

8   management." Id. at 3.

9       The PPM refers throughout to "the Partnership's assets," "the Partnership's

10  investment objective," "Interest[s] in the Partnership," and "an investment in the

11  Partnership." Id. at 3, 8-9.  For example, in describing "The Offering," the PPM states that

12  "[t]he Partnership is offering limited partnership interests in the Partnership ('the Interests')

13  on a continuous basis to persons who are Accredited Investors . . . . Each Interest

14  represents a percentage interest in the Partnership determined by reference to the capital

15  account of each Partner in relation to the aggregate capital accounts of all Partners." Id. at

16  8.  The section headed "Risk Factors" begins, "Before purchasing an Interest in the

17  Partnership, you should carefully consider various risk factors and conflicts of interest . . . ."

18  Id.

19      Based on the language of the PPM and the Partnership Agreement, the court

20  concludes that plaintiffs were not "investors" in the Fund.  Thus, the Partnership Agreement

21  and PPM, by their terms, do not apply to plaintiffs.  Plaintiffs have alleged no facts

22  supporting their claim that Olympia had a duty to disclose information to them.  Olympia

23  was hired by the general partner to work for the partnership, and any duty it owed was

24  owed only to the general partner and the partnership.

25      In addition, however, the Administration Agreement does not expressly obligate

26  Olympia to provide even limited partners with monthly reports.  The Administration

27  Agreement required Olympia to distribute "annual or other periodic reports" to investors; to

28  "respond[ ] to and communicat[e] with investors and prospective investors, and members of

14

United States District Court
For the Northern District of California

1    the general public;" and to "calculate on a monthly basis the Partnership's Net Asset Value,

2    and capital account balances of the Limited Partners."  Administration Agr.

3    ¶ 4(a)(vi), (ix), (xi).  These are all listed as separate duties.  There is no requirement that

4    Olympia prepare a monthly report regarding the net asset value and capital account

5    balances and distribute that report to the limited partners.  Nor is there any provision

6    requiring Olympia to distribute any report on a regular basis to prospective investors or

7    members of the general public.

8       In short, plaintiffs have not pled any facts showing that Olympia had any duty to

9    provide a monthly report to any "investor,"[4] let alone facts showing that Olympia owed any

10    such duty to an entity that was not a limited partner in the Fund partnership.

11                                     *Falsity*

12       Olympia argues that the FAC does not meet the requirement for pleading falsity

13    because it alleges neither that Olympia made a false statement, nor that Olympia omitted to

14    make a statement that was necessary to make whatever it did say not misleading.  The

15    court agrees that the FAC must be dismissed for failure to allege falsity.

16       Plaintiffs appear to concede that the FAC does not plead facts showing that Olympia

17    made any false statements to plaintiffs.  In their opposition brief, and also at the hearing on

18    the motion, plaintiffs argued that the fraud claim was based on an "omission" (rather than

19    on an affirmative misrepresentation).  They asserted that Olympia's alleged agreement to

20    issue periodic reports to investors was misleading, because Olympia failed to issue a

21    monthly report showing the Fund's April 2005 performance – in other words, that Olympia

22    was required to issue a report on the Fund's April 2005 performance in order to make the

23    agreement to issue periodic reports not misleading.

24

25        [4] As discussed in detail above, neither the Administration Agreement, nor the PPM, nor

26    the Partnership Agreement imposed such a requirement.  And even if the Olympia had been
under such a duty, plaintiffs have not alleged facts showing that Olympia was obliged to

27    provide a report concerning April 2005 performance by May 5, 2005.  Moreover, given that
that plaintiffs "invested" in the Fund only in April and May of 2005, they could not have formed

28    any expectation, based on prior practice, that Olympia would issue a monthly report, or that
it would be issued on any particular date.

United States District Court

For the Northern District of California

1    However, plaintiffs' argument fails for at least two reasons.  First, as explained

2  above in the discussion of "duty to disclose," the Administration Agreement imposed no

3  obligation on Olympia to issue monthly reports to investors.  Second, the parties to the

4  Administration Agreement were Olympia and the limited partnership – not Olympia and

5  plaintiffs.

6                                            *Scienter*

7    Olympia asserts that plaintiffs have plead no facts showing scienter, and that the

8  only inference to be drawn from the April 18th e-mail is that Olympia acted innocently and

9  without the required scienter.  Olympia contends that the only allegations in the FAC

10  regarding scienter are the assertion that the April 18, 2005 e-mail sent by Olympia to

11  Hankins shows that Olympia "knew or should have known that Hankins was reporting false

12  performance data;" and the assertion that Olympia failed to alert anyone "at any [c]laimant"

13  of the fraudulent activities being conducted by Hankins and Tenet Management.  FAC

14  ¶ 42.

15    Olympia argues that these allegations do not give rise to a strong inference that

16  Olympia failed to send the April report or omitted other information with the required

17  scienter.  Olympia submits that, at most, the April 18th e-mail indicates that Olympia had

18  reason to believe that the prior year's annual performance data provided by Tenet

19  Management was not accurate.  Olympia contends that this does not give rise to a strong

20  inference that Olympia knew that Tenet Management was engaging in fraud (as opposed to

21  making an innocent mistake in its marketing materials), let alone that Olympia knowingly or

22  recklessly failed to disclose its knowledge of such fraud to plaintiffs.  Olympia asserts that

23  the April 18th e-mail simply pointed to a possible discrepancy in the performance data

24  provided to it.

25    Olympia contends that rather than showing intent to defraud, the e-mail actually

26  shows that Olympia was focused on ensuring that the Fund's investors received accurate

27  information.  Olympia argues that plaintiffs have invented the idea that Olympia fraudulently

28  concealed the April report from them, and asserts that if Olympia failed to distribute the

**United States District Court**
For the Northern District of California

1  report, it acted on the instructions of Hankins, pursuant to the PPM (providing that limited

2  partners receive annual financial reports and "other reports as determined by the [g]eneral

3  [p]artner in its sole discretion").

4      In opposition, plaintiffs contend that they have adequately pleaded facts showing

5  scienter.  They point to the allegations that on or about April 18, 2005, Olympia learned that

6  Hankins was reporting performance data that was false, and sent Hankins an e-mail

7  advising that the performance data in Tenet Management's marketing materials did not

8  reconcile with Olympia's performance data on the Fund.  They also note that the FAC

9  alleges that Olympia knew that Tenet Management had earlier (February 2005) incurred a

10  margin call at Lehman, and that Lehman had terminated its prime broker relationship with

11  Tenet Management over Tenet Management's failure to satisfy the margin call.  They

12  assert that Olympia knew or should have known that plaintiffs were investing substantial

13  amounts in the Fund, since it supervised the Fund.  Plaintiffs also contend that Olympia

14  was motivated to conceal unfavorable information from investors, because it was receiving

15  "high fees" for managing the Fund.

16      Plaintiffs argue that the April 18th e-mail shows that as of that date, Olympia was

17  aware of the true facts regarding the Fund, and was also concerned about its liability for

18  misstatements made to investors.  Plaintiffs claim that Olympia acted recklessly and

19  deliberately when, in early May 2005, it failed or refused to report the net asset value and

20  related information for the Fund for the month of April 2005.  Plaintiffs assert that had

21  Olympia filed the reports, the Fund's losses during April 2005 due to trades in Google

22  would have been disclosed, and plaintiffs would not have made additional investments in

23  May 2005.

24      The court finds that the total of plaintiffs' allegations are insufficient to create a strong

25  inference that defendants acted with deliberate or conscious recklessness.  See Lipton v.

26  Pathogenesis Corp., 284 F.3d 1027, 1038 (9th Cir. 2002).  The FAC pleads no facts giving

27  rise to a strong inference of deliberate or conscious recklessness.  Plaintiffs simply allege,

28  in a conclusory fashion, that the April 18th e-mail shows that Olympia knew that Hankins

United States District Court

For the Northern District of California

1   and Tenet Management had misstated facts in some unidentified promotional materials for

2   the Fund.  But the April 18th e-mail reflects only that Olympia was concerned about some

3   statement in these unidentified materials, and was seeking additional information from

4   Hankins/Tenet.  It also indicates Olympia's concern that the Fund's investors receive

5   accurate information.

6        Plaintiffs' argument that scienter can be determined from Olympia's "knowledge" that

7   Tenet Management had incurred a margin call in February 2005 is similarly without merit,

8   because the FAC contains no factual allegations showing that Olympia had any knowledge

9   of the margin call, and contains no particularized allegations stating when, how, and from

10  whom Olympia supposedly learned this information.  Plaintiffs base this allegation on the

11  claim that Olympia supposedly "ran" the Fund, without any factual support.

12       The claim that Olympia was motivated to deceive investors because it was receiving

13  "high fees" for management is also unpersuasive.  Generalized assertions of financial

14  motive, without more, are insufficient to meet the heightened pleading requirement of the

15  PSLRA.  See, e.g., In re Syncor Int'l Corp. Sec. Litig., 327 F.Supp. 2d 1149, 1167 (N.D.

16  Cal. 2004).

17       The court notes in addition that plaintiffs assert a number of times that they should

18  be allowed discovery to ascertain whether Olympia was aware of problems with the Fund

19  as early as February 2005 (when Lehman withdrew as prime broker when Tenet

20  Management failed to meet the margin call) and also to ascertain the "nature and extent" of

21  Olympia's duties to the Fund, and the extent to which Olympia was running the Fund, as

22  opposed to merely offering "back office" services.

23       The PSLRA was passed in response to perceived discovery abuses in securities

24  litigation.  SG Cowen Sec. Corp. v. U.S. Dist. Ct., 189 F.3d 909, 911 (9th Cir. 1999).  The

25  PSLRA provides, in part,

26           In any private action arising under this chapter, all discovery and other
             proceedings shall be stayed during the pendency of any motion to dismiss,
27           unless the court finds upon the motion of any party that particularized
             discovery is necessary to preserve evidence or to prevent undue prejudice to
28           that party.

18

15 U.S.C. § 78u-4(b)(3)(b).  Congress intended the PSLRA stay to achieve two objectives: preventing "unnecessary imposition of discovery costs on defendants," and ensuring that class action complaints "stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed."  SG Cowan, 189 F.3d at 911.  Put another way, Congress intended to make it difficult for private securities litigants to survive a motion to dismiss unless they possess, at the time of filing, evidence that defendants had knowledge of, or were deliberately reckless regarding, the falsity of public statements at the time they were made.  See In re Silicon Graphics, 183 F.3d at 985 (not sufficient for plaintiff's pleadings to set forth belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim).

The PSLRA imposes a heightened pleading standard, and plaintiffs are not entitled to discovery until and unless they are able to survive a motion to dismiss for failure to state a claim.  Moreover, their argument that they require discovery to learn the extent of Olympia's knowledge of the margin call is in effect an admission that they lack sufficient facts to plead scienter.

*Loss causation*

In Dura, the Supreme Court ruled that a private plaintiff who claims securities fraud must prove that the defendant's fraud or other misrepresentation "proximately caused the plaintiff's economic loss."  Dura, 544 U.S. at 346.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege an economic loss, and must plead facts showing a causal connection between the alleged misrepresentation and the economic loss.  Id. at 347. Olympia argues that while plaintiffs have alleged transaction causation – that "but for" the alleged failure to issue the report at the end of April 2005, plaintiffs would not have purchased the hedge fund derivatives –  they have failed to allege loss causation – that Olympia's alleged failure to issue a report for April 2005 ultimately caused plaintiffs' loss.

Specifically, Olympia contends that because the FAC does not plead that it was Olympia's failure to provide the April report that caused the Fund to lose value, or that Olympia participated in some way in Hankins/Tenet's decision to short the Google stock,

United States District Court

For the Northern District of California

1    plaintiffs cannot plead loss causation.  Indeed, Olympia asserts, the FAC plainly indicates

2    what plaintiffs believe caused the loss – Hankins/Tenet's "decision to take large, naked

3    short, concentrated positions in Google . . . resulting in the [F]und's value decreasing . . .

4    FAC ¶ 25(a).  Thus, Olympia contends, plaintiffs cannot now assert that the loss was

5    caused by something that Olympia did or did not do.

6        In opposition, plaintiffs contend that the FAC adequately pleads causation, because

7    it alleges that plaintiffs were relying on Olympia to provide timely and accurate information

8    relating to their investment, and that they invested over $4 million in May 2005, not knowing

9    the true facts.  Plaintiffs argue that <u>Dura</u> is inapposite here, because in that case, the

10   Supreme Court held legally insufficient the allegation that plaintiffs had paid artificially high

11   prices for the corporation's securities and had suffered damages.  Plaintiffs claim that they

12   are required only to provide Olympia with notice of what the loss was and what the causal

13   connection was between the loss and the alleged misrepresentation or omission.  They

14   maintain that they have alleged both the loss and the causal connection.

15       The court finds that plaintiffs have failed to allege loss causation.  The causation

16   requirement for Rule 10b-5 actions includes "both transaction causation, that the violations

17   in question caused the plaintiff to engage in the transaction, and loss causation, that the

18   misrepresentation or omissions caused the harm."  <u>Livid Holdings Ltd. v. Salomon Smith</u>

19   <u>Barney, Inc.</u>, 416 F.3d 940, 949 (9th Cir. 2005) (citation and quotation omitted).  Plaintiff's

20   economic loss was proximately caused by the decline in value of the Fund.  However, the

21   FAC alleges no facts to satisfy the loss causation requirement, because the FAC alleges no

22   facts showing a connection between the decline in the value of the Fund and the claimed

23   omission (failure to issue a report regarding April 2005 net asset value), and alleges no

24   facts showing that Olympia participated in Hankins' decision to invest in Google.  Olympia's

25   alleged failure to issue a report regarding the April 2005 net asset values can be pled only

26   as transaction causation.

27                              *No liability for aiding and abetting*

28       Finally, Olympia contends that plaintiff's § 10(b) claim should be dismissed because

United States District Court

For the Northern District of California

1   it essentially amounts to a claim of aiding and abetting – a claim that cannot be brought

2   under § 10(b) by a private litigant.  Because the FAC must be dismissed for failure to allege

3   the necessary elements as stated above, the court does not address this last argument.

4                                              **CONCLUSION**

5          In accordance with the foregoing, the court finds that the tenth cause of action must

6   be DISMISSED.  In general, leave to amend is to be granted with extreme liberality in

7   securities fraud cases because the heightened pleading requirements of the PSLRA are so

8   difficult to meet.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.

9   2003).  Here, however, the court finds that amendment would be futile because plaintiffs

10  are unable to articulate any duty owed by Olympia to them.  As discussed above, the

11  Administration Agreement imposed no duty on Olympia to issue a monthly report to

12  investors; and even if it had, plaintiffs were not "investors" as defined by the Partnership

13  Agreement.  Accordingly, the dismissal is WITH PREJUDICE.

14         The court having dismissed Hankins, Tenet Management, and the Fund for failure to

15  serve, and having dismissed the 1934 Exchange Act claim against Olympia, the only claims

16  remaining in the case are the eleventh through sixteenth causes of action – all state law

17  claims – asserted against Olympia.

18         Under 28 U.S.C. § 1367(c), the district court may decline to exercise supplemental

19  jurisdiction over a state claim if the district court has dismissed all claims over which it has

20  original jurisdiction.  The exercise of this discretion is informed by the values of "economy,

21  convenience, fairness, and comity."  Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th

22  Cir. 1997) (en banc) (citing  United Mine Workers v. Gibbs, 383 U.S. 715 (1966)).  In the

23  usual case in which all federal-law claims are eliminated, the balance of factors to be

24  considered will point toward declining to exercise jurisdiction over any remaining state-law

25  claims.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); Wade v. Reg'l

26  Credit Ass'n, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a

27  federal claim, leaving only state claims for resolution, it should decline jurisdiction over the

28  state claims and dismiss them without prejudice.").

                                                    21

**United States District Court**
For the Northern District of California

1        Accordingly, the court, having dismissed plaintiffs' federal claims, declines to

2   exercise supplemental jurisdiction over any remaining state law claims against Olympia.[5]

3

4   **IT IS SO ORDERED.**

5   Dated: September 18, 2006   _____

6                                         PHYLLIS J. HAMILTON

7                                         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5] Plaintiffs may refile these state law claims in state court.  As for the claims asserted against Hankins, Tenet Management, and the Fund, which the court has dismissed pursuant to Rule 4(m) for failure to serve, should plaintiffs choose to refile those claims, they should also be brought in state court, as this court would likely dismiss them for the same reasons they were dismissed against Olympia.